*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

CARYN DELYNN BROWN,

        Defendant-Appellant.

UNPUBLISHED
June 04, 2026
12:24 PM

No. 374865
Berrien Circuit Court
LC No. 2023-002400-FH

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant, Caryn Delynn Brown, appeals as of right her jury trial conviction of assault with a dangerous weapon (felonious assault), MCL 750.82, arguing trial defense counsel was ineffective for failing to request a specific unanimity instruction. We affirm.

## I. FACTUAL BACKGROUND

This case arises from an argument among people who have a long history. Chira Johnson was defendant's next-door neighbor. On August 2, 2023, when Johnson's daughter was walking the family's dog, defendant let her dogs out, and they approached Johnson's daughter and her dog while barking. Johnson came outside to address the situation, as this was the second day in a row where a problem had arisen. According to Johnson, while they were on their respective porches, defendant "pull[ed] a boxcutter out and she start[ed] to wave it around," with defendant stating, "You better ask about me because you know I'm crazy." Johnson described the boxcutter as being "pinkish-orange" in color. Johnson's daughter also saw the boxcutter in defendant's hand and, at Johnson's request, she sent a text message to her aunt, Dawn Hampton, asking if Hampton could speak with defendant to address the situation, as Hampton got along with defendant.

Hampton agreed and drove over to the neighborhood after she got off from work. When she was almost at defendant's house, Hampton saw defendant in front of another neighbor's house with other neighbors. Hampton stopped her car, left it running, and asked defendant if she could talk with her. After Hampton asked defendant what was going on with Johnson's daughter, an argument ensued. Defendant started yelling and swearing and "putting her hands in [Hampton's] face talking about what she was going to do to [her]." The argument then escalated with defendant

-1-

stating that she was going to "bust [Hampton's] lips, flatten [her] lips, then she was going to cut [her] lips off" while defendant tapped her pocket. Hampton could see that there was an orange razor or boxcutter in defendant's left pocket, so she stepped back.

Johnson, who was inside her house at the time, came outside when she heard the commotion. She testified that she saw and heard defendant threaten Hampton with the boxcutter, including the threats about Hampton's lips.

The neighbor who owned the house and front yard where the argument took place told defendant and Hampton to move away from her house, threatening to call the police. Defendant moved toward the curb. Hampton received a phone call from her husband who heard the commotion. Hampton's husband decided to come to help Hampton. Meanwhile, while the argument continued, defendant eventually walked toward the porch of the neighbor's house and went inside.

Hampton's husband arrived. Defendant exited the house and Hampton's husband told defendant to leave Johnson's daughter alone. According to Hampton, defendant was yelling as she came down the stairs of the porch with a butcher knife heading in the direction of Hampton's husband. It was unclear who Johnson thought defendant may have been threatening with the butcher knife. Hampton's husband left to go home when he saw the butcher knife. At some point during this incident, the neighbor called 911. Hampton and Johnson went to Johnson's house and, when the police officers arrived, spoke to them at the house. Defendant was charged with two counts of felonious assault with a dangerous weapon, one relating to Hampton and the other relating to Johnson.

At trial, both Johnson and Hampton testified. Defendant testified on her own behalf, claiming that she did not have a knife, razor, boxcutter, or any weapon with her on August 2, 2023. Several other witnesses also testified that defendant never had any weapons. During closing arguments, the prosecution argued that defendant's assault—the act that caused Hampton to fear an immediate battery—was the act of "pulling out that razor, saying 'I'm going to flatten your lips,' [and] 'I'm going to cut you.' " The jury convicted defendant of felonious assault relating to Hampton but acquitted her of the felonious assault relating to Johnson. The court sentenced defendant to 56 days' jailtime and 18 months' probation. This appeal followed.

## II. DEFENDANT WAIVED ANY CHALLENGE TO THE JURY INSTRUCTIONS AS GIVEN

Defendants argues that the trial court erred by failing to provide a specific unanimity instruction, which deprived her of her constitutional right to a unanimous jury verdict. She asserts this error should be reviewed for plain error affecting her substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant is wrong, however, because she waived this issue. "A defendant may waive his or her challenge to jury instructions. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019), citing *People v Carter*, 462 Mich 206, 215-216; 597 NW2d 130 (1999). "Waiver extinguishes any error, leaving nothing for this Court to review." *Id*. (citation omitted). "A defendant waives an issue by expressly approving of the trial court's action." *Id*. (citation omitted).

"When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is in affirmative approval of the trial court's instructions." *Id*. (citation omitted).

In this case, the proposed jury instructions included a general unanimity instruction, but not a specific unanimity instruction, and the trial court twice asked defense counsel if the defense had any objections to the instructions. The first time, defense counsel raised an objection to the instructions regarding circumstantial evidence. But defense counsel did not raise any objection regarding the lack of a specific unanimity instruction.

The second time the trial court discussed jury instructions was before closing arguments, again asking each party if there were any issues. Defense counsel only referenced the prior issue regarding circumstantial evidence, did not request a specific unanimity instruction, and he initialed the final instructions before the court read them to the jury. Objecting to another instruction is insufficient to preserve the special unanimity instruction on appeal. *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). And the record reveals that defense counsel expressly approved of the jury instructions as given. Thus, defendant waived this issue on appeal. *People v Traver*, 502 Mich 23, 41; 917 NW2d 260 (2018); *Miller*, 326 Mich App at 726.

## III. DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A SPECIFIC UNANIMITY INSTRUCTION

### A. STANDARD OF REVIEW AND LEGAL STANDARD

"[W]hile an appellate court will not ordinarily review an issue that has been abandoned or waived, such review is allowed when it is necessary to a proper determination of a case . . . ." *People v Rao*, 491 Mich 271, 289 n 4; 815 NW2d 105 (2012) (quotation marks and citation omitted). In this case, "defendant must establish a valid claim of ineffective assistance of counsel in order for [her] to be entitled to relief on [her] waived claims of instructional error." *Traver*, 502 Mich at 43 n 10.

In general, "[a] claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted). "When the reviewing court is left with a definite and firm conviction that the trial court made a mistake, there is clear error." *Id*. (quotation marks omitted), quoting *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Where, as here, "a defendant fails to "request a *Ginther*[1] hearing or move for a new trial in the matter, this Court's review is limited to mistakes apparent on the appellate record." *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). "Defense counsel is not ineffective for failing to request a jury instruction if there was insufficient evidence that the jury instruction would apply to the defendant's case." *People v Geary*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371889); slip op at 3 (citation omitted).

## B. DEFENDANT CANNOT ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that her attorney was ineffective and that but for the error she would have had a different result. She believes she was entitled to a specific unanimity instruction because the prosecutor presented more than one act as evidence of her criminal offense against Hampton, specifically, the boxcutter during the initial interaction outside the house and the butcher knife when defendant was on the porch. We disagree.

"A jury verdict must be unanimous." MCR 6.410(B). "Michigan law provides criminal defendants the right to a unanimous jury verdict." *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014). The trial court has a duty to properly instruct the jury regarding unanimity to protect a defendant's right to a unanimous verdict. *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity." *Chelmicki*, 305 Mich App at 68. However,

> when the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act *if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt*. When neither of these factors is present . . . a general instruction to the jury that the verdict must be unanimous does not deprive the defendant off his right to a unanimous verdict. [*Cooks*, 466 Mich at 530 (emphasis added).]

To convict defendant of felonious assault, the prosecution had to prove (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Contrary to defendant's argument, the prosecution presented evidence of felonious assault based on defendant's threat to Hampton with a boxcutter by relying on Johnson's and Hampton's testimony. Specifically, during its opening statement, the prosecution previewed Hampton's testimony, stating that Hampton would testify that defendant was "going to cut [Hampton's] lips off" while showing her a "box cutter or a straight razor" taken from her pocket. The prosecution also stated that Johnson would testify to seeing defendant pull a boxcutter to threaten Hampton.

Then, during closing argument, the prosecution argued that defendant's act "that caused a reasonable person, in this case [Hampton], to fear an immediate battery" was the act of "pulling out that razor, saying 'I'm going to flatten your lips.' " [and] 'I'm going to cut you.' " The prosecution then summarized the evidence, stating, "defendant clearly intended for [Hampton] to believe that she was going to cause an immediate battery," and "something that—used to inflict serious injury, like a knife, is a dangerous weapon."

Defendant argues that the evidence of her threat with a butcher knife means her attorney was ineffective for not seeking a specific unanimity instruction, particularly since she was charged with assaulting Hampton "with a dangerous weapon, to wit: a razor and/or a knife, but without intending to commit the crime of murder or to inflict great bodily harm less than murder." Defendant believes that by identifying the dangerous weapon as "a razor and/or a knife," the boxcutter and the butcher knife were alternative acts for the *actus reus* element of the felonious assault charge.

But to demonstrate that she was entitled to the specific unanimity instruction, defendant had to establish that "more than one act [was] presented as evidence of the actus reus of a single criminal offense." *Chelmicki*, 305 Mich App at 68 (quotation marks and citation omitted). That is simply not the case here. As mentioned, the prosecution focused its evidence and argument on the boxcutter, which has attributes of both a razor and a knife, that defendant used to threaten Hampton, which was a specific count. While there was testimony that defendant later came out onto the porch with a butcher knife, that occurred in response to the arrival of Hampton's husband and was directed as much at him, not at Hampton alone as stated in the charging document and argued. Additionally, when the trial court instructed the jury on the definition of a "dangerous weapon," it told them they had to decide "whether the prosecutor has proven that the boxcutter, razor in question was a dangerous weapon," and made no mention of a butcher knife.

Moreover, defendant's witnesses, including herself, testified that defendant never had any weapon, and defendant testified that she never threatened Hampton or Johnson. On appeal, defendant maintains this blanket defense. In such circumstances, where the jury is making a credibility determination, a defendant is not entitled to a specific unanimity instruction. See *Cooks*, 446 Mich at 528 (holding that the defendant was not entitled to a specific unanimity instruction when he "merely denied the existence of any inappropriate behavior").

Defendant has failed to establish that the prosecution presented more than one act as evidence of the *actus reus* of her single criminal offense such that she would have been entitled to a specific unanimity instruction. *Chelmicki*, 305 Mich App at 68. Consequently, her trial counsel was not ineffective because there is insufficient evidence to establish that the jury instruction would have applied to her case. *Geary*, ___ Mich App at ___; slip op at 3; *People v Ericksen*, 288 Mich App 192, 201, 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Moreover, in this context, defendant has not established a reasonable probability that the result of the trial would have been different if a specific unanimity instruction had been given to the jury. *Shaw*, 315 Mich App

at 672. We find no deprivation of defendant's right to the effective assistance of counsel apparent from the record. *Foster*, 319 Mich App at 390.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense