*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

V

JESSE ELGIN GOORHOUSE,

          Defendant-Appellant.

UNPUBLISHED
June 04, 2026
2:11 PM

No. 375798
Kalamazoo Circuit Court
LC No. 2024-000376-FH

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant, Jesse Elgin Goorhouse, appeals as of right his jury trial conviction of misdemeanor domestic violence, MCL 750.81(2), as amended by 2016 PA 87, arguing the trial court failed to give the jury a specific unanimity instruction and his trial defense counsel was ineffective for failing to request one. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2024, defendant's girlfriend of over 10 years, Ashley Whitaker (AW) reported a "domestic assault" to the police. Defendant was arrested and charged with assault with a dangerous weapon (felonious assault), MCL 750.82 (Count I), and misdemeanor domestic violence, MCL 750.81(2) (Count II).

Defendant's jury trial occurred in January 2025. AW and Officer Chad Deem, the responding officer to AW's call, testified for the prosecution. AW testified that on January 30, 2024, defendant and AW were living together at a residence in Richland Township and have two children in common. AW and defendant got into a "verbal argument" and afterward, defendant left the house and got into AW's parents' vehicle. AW followed defendant outside and slammed her hand on the hood of the vehicle to try to prevent defendant from driving away. Within "seconds," AW walked around the front of the vehicle and defendant began driving, hitting AW's left hip with the front grille on the driver's side. This contact did not result in significant injury: "It was just sore, like, it just hurt. It was not bruised, scratched . . . ."

After defendant hit AW's left hip with the vehicle, AW made her way to the driver's side door, used her left hand to open the door, "got on top" of defendant, and tried to grab the car keys from defendant with her right hand while telling him that he could not drive her parents' vehicle. Defendant continued driving the vehicle while the door was open and AW was on top of him. She testified: "He just shoved me as hard as he could and called me a stupid c*** then ran me over." After defendant shoved AW out of the vehicle, she fell backwards, and defendant ran the left-rear wheel of the vehicle over AW's right ankle. He then "accelerated and sped off."

According to AW, "[t]he car never stopped. I never saw the car stop. Any of the time I went outside." She estimated defendant was driving "like 5, 10" miles per hour, and "he wasn't going fast, but never paused. . . . He never touched the brakes."

AW called the police and Officer Deem was dispatched to the residence. Officer Deem observed and photographed the injury to AW's right ankle; the photographs showed redness and swelling caused by the tire running over AW's ankle. Officer Deem subsequently arrested defendant.

After the prosecution rested, and outside the presence of the jury, the defense moved for a directed verdict on the felonious assault charge and the trial court denied the motion. Defendant did not testify, and the defense rested. The trial court and the parties reviewed proposed jury instructions in chambers. After emerging from chambers, the judge, referring to the jury instructions, asked on the record: "Any issues before we bring the jury in, counsel?" The prosecutor responded: "No issues that I saw in the jury instructions. We went over them. I have no objection to what we discussed in the chambers." Defense counsel responded: "Same."

During the prosecutor's closing argument, he argued that any one of four acts satisfied the first element for the felonious assault charge, the *actus reus*: (1) hitting AW's hip with the vehicle, (2) running over AW's ankle, (3) putting AW in fear of being hit with the car, and (4) putting AW in fear of being run over.

The prosecutor then argued that the jury did not need to unanimously agree which battery (hitting AW in the hip with the vehicle or running over her right ankle) constituted the requisite *actus reus* needed to convict her of felonious assault:

> You can think unanimously, all 12 of you in [the] deliberation room can think both of those things happened, battery in doubt. Or half of you think it was the first one or half of you think it was the second one. As long as you guys collectively agree that a battery happened with a dangerous weapon he's guilty of first degree. You don't have to agree unanimously what kind of battery, as long as it fit the other elements.

The prosecutor then argued that three acts satisfied the first element for the misdemeanor domestic violence charge: (1) hitting AW's hip with the vehicle, (2) shoving AW out of the vehicle, and (3) running over AW's ankle.

After the prosecution's closing argument, defense counsel objected to the prosecution's statement that the jury need not be unanimous about what constituted the assault for the felonious assault charge, arguing it violated *People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994). Defense

counsel stated he was "not sure that a curative statement can fix this situation," and moved for a mistrial. In response, the prosecutor conceded he misstated the law in contravention of *Cooks* but that he did not do so in bad faith, and argued a mistrial was not necessary because a curative instruction would adequately correct his misstatement.

The trial court sustained defense counsel's objection, denied the motion for a mistrial, and read the following curative instruction to the jury regarding the felonious assault charge:

> So the record reflects that defense counsel objected to mischaracterization of the law stated in the prosecutor's [closing] statement. You will recall that during his [closing] statement, the prosecutor stated that if you found that six of you believed the strike to the hip was assault with a dangerous weapon, and six of you believed the running over the foot was assault with a dangerous weapon, that would be considered a unanimous verdict. That is not correct.
>
> In order to find him guilty on the count of assault with a dangerous weapon, you either need to find unanimously that he struck her with the hip and that was assault with a dangerous weapon, or unanimously that he ran over her ankle with the vehicle.

The trial court asked both parties: "Does that clarify, counsel?" Defense counsel answered: "Yes. Thank you." The prosecutor answered: "Yes, Judge, it does."

Defense counsel then gave his closing argument, and the prosecutor gave a rebuttal closing argument. Before reading final jury instructions, the trial court asked: "Any issues before final instructions to the jury?" and both parties answered "no." The trial court read the final instructions to the jury, which included a standard unanimity instruction from M Crim JI 3.11, that "[a] verdict in a criminal case must be unanimous." The trial court also directed the jury to "take the law as I give it to you. If a lawyer says something different about the law, follow what I say." When the trial court finished reading jury instructions, it asked "Anything else before we send them back to deliberate?" The parties did not raise any issues with the instructions as given.

The jury began deliberating that day. Deliberations continued into the next morning, at which time jury asked the trial court in writing whether they were able to have a different verdict for each count. The trial court responded "yes," in writing, and referred the jury to M Crim JI 3.20, "Single Defendant-Multiple Counts-More Than One Wrongful Act." The jury next asked the trial court in writing to provide "specific details around a hung jury," asking "what is the definition? What is the time frame? What is the outcome of the trial? Would a hung jury apply to all counts of the verdict?" The trial court responded in writing that it would provide a verbal answer on the record.

The trial court went on the record to answer the jury's questions, again referring them to M Crim JI 3.20 and clarifying the jury could find defendant guilty or not guilty of "all or any one of the crimes." The trial court also read M Crim JI 3.12, "Deadlocked Jury," in full, and sent the jury back to deliberate further.

The jury later informed the trial court in writing that "[w]e are stuck on the second element within the first count. Would you have any direction around moving forward with that?" That

was the "intent" element for felonious assault. The trial court responded in writing "[p]lease review instructions." A couple hours later, the jury informed the trial court that it was "deadlocked on one of the counts only and [did] not know how to proceed." The trial court answered in writing "If you are unanimous on one of the counts, please fill out the verdict form for that count. The deadlocked count will be addressed in court."

The jury returned with a verdict: deadlocked on the felonious assault charge and guilty of misdemeanor domestic violence. The prosecution later filed a motion for an order of nolle prosequi as to the felonious assault charge, which was granted on January 31, 2025. Defendant was sentenced to 18 months' probation on the domestic violence conviction, and this appeal followed.

## II. ANALYSIS

Defendant argues the trial court erred by failing to instruct the jury that it had to unanimously agree on which *actus reus* made him guilty of domestic violence, which deprived him of his constitutional right to a unanimous jury verdict. Alternatively, defendant asserts his trial defense counsel was ineffective for failing to request a specific unanimity instruction for the domestic violence charge. We disagree with both contentions.

### A. DEFENDANT'S CLAIM OF ERROR IS WAIVED

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). This must be done before the jury deliberates. *Id*. Defendant argues this issue is preserved because defense counsel objected to the prosecutor's misstatement of the law during closing and should be reviewed de novo. But defense counsel's objection was limited to the felonious assault charge, which was the only charge about which the prosecutor made a potentially incorrect argument. The trial court sustained the objection, read a requested specific unanimity instruction regarding felonious assault, asked the defense if it was satisfied, and the defense did not ask for an additional unanimity instruction for domestic violence or any other additional instruction. "An objection based on one ground at trial is insufficient to preserve appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993); see also MCR 2.512(C). This issue is therefore unpreserved, *id*., and ordinarily would be reviewed "for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

However, defendant not only did not preserve this issue; he also waived it. Our Supreme Court has defined "waiver" as "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 597 NW2d 130 (1999) (citation omitted). "A defendant waives an issue by expressly approving of the trial court's action." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). "When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is in affirmative approval of the trial court's instructions." *Id*. "Waiver extinguishes any error, leaving nothing for this Court to review." *Id*.

Here, after giving the curative unanimity instruction for the felonious assault charge, the trial court asked the parties whether the instruction clarified things adequately, and defense counsel

answered affirmatively. He did not ask for the instruction to be given for the domestic violence charge. Then, before reading final jury instructions, the trial court asked again whether there were "any issues before final instructions to the jury," and both parties answered "no." Defense counsel's responses affirmatively approving the trial court's instructions waived this substantive issue. *Id.*

### B. DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO REQUEST A SPECIFIC UNANIMITY INSTRUCTION FOR DOMESTIC VIOLENCE

"[W]hile an appellate court will not ordinarily review an issue that has been abandoned or waived, such review is allowed when it is necessary to a proper determination of a case . . . ." *People v Rao*, 491 Mich 271, 289 n 4; 815 NW2d 105 (2012) (quotation marks and citation omitted). Here, that means addressing whether counsel was ineffective for failing to seek an additional specific unanimity instruction. See *People v Traver*, 502 Mich 23, 43 n 10; 917 NW2d 269 (2018) (addressing defendant's claim of instructional error in the context of whether his trial counsel was ineffective because it was necessary to determine whether he was entitled to relief). Because defendant did not move for a *Ginther*[1] hearing on whether defense counsel should have requested a specific unanimity instruction for the domestic violence charge, nor did he move for a new trial, our "review is limited to mistakes apparent on the appellate record." *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017).

A criminal defendant has a right to a fair trial, and therefore the effective assistance of counsel. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021), citing US Const, Am VI; Const 1963, art 1, § 17. "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

"A jury verdict must be unanimous." MCR 6.410(B); see also *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014). The trial court has a duty to properly instruct the jury regarding unanimity to protect this right. *Cooks*, 446 Mich at 511. "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity." *Chelmicki*, 305 Mich App at 68. However,

> when the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act *if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt*. When neither of these factors is present . . . a general instruction to the jury that the verdict must

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

be unanimous does not deprive the defendant off his right to a unanimous verdict. [*Cooks*, 466 Mich at 530 (emphasis added).]

A specific unanimity instruction may be required in some cases where a defendant is charged with domestic violence. An individual is guilty of misdemeanor domestic violence when they "assault[] *or* assault[] and batter[] . . . an individual with whom the individual has or has had a dating relationship, an individual with whom the individual has had a child in common, or a resident or former resident of the individual's household . . . ." MCL 750.81(2) (emphasis added).[2] Defendant argues that because the prosecution presented multiple acts as evidence of the *actus reus* for the "assault or assault and battery" element of domestic violence, defense counsel was ineffective for failing to request a specific unanimity instruction as to this charge.

But under *Cooks*, 466 Mich at 530, unless those acts are materially distinct or there is reason to believe jurors may have been confused or disagreed about the factual basis of defendant's guilt such a specific unanimity instruction was not required. Defendant does not argue that jurors were confused by the trial court's instructions for domestic violence, only that the failure to give one "created serious potential for" juror confusion about "which specific act provided the basis for their verdict for the [domestic violence] conviction." But jurors made clear on the second day of trial that they were not confused about the *actus reus* for either offense when stating in a written question to the trial court: "We are stuck on the second element within the first count," which was the intent to injure or make the victim reasonably fear a battery. M Crim JI 17.9(3); MCL 750.82(1). Also during deliberations, the jury asked whether they could convict defendant of one count but not the other, and, when they were told that they could, they did so. Again, there is no evidence or inference that they were confused or disagreed about what conduct formed the basis for their verdict. On this basis, we cannot logically deduce any jury confusion existed as to the *actus reus* of either charge.

Moreover, the acts presented by the prosecutor in support of the domestic violence charge were not materially distinct and instead were part of a continuous course of conduct, meaning defense counsel was not ineffective for failing to request an additional specific unanimity instruction. *Cooks*, 446 Mich at 528 (sexual penetration over a three-day period was part of a "continuous course of conduct" to support one count of criminal sexual conduct). The prosecutor here suggested three acts as forming the basis for the domestic violence charge: (1) hitting AW's hip with the vehicle, (2) shoving AW out of the vehicle, and (3) running over AW's ankle. But they were so closely connected in time that they were "tantamount to a continuous course of conduct." *Id*. at 503. AW testified that within "seconds" of slamming her hand on the hood of the vehicle, defendant hit her hip with the vehicle, and that the vehicle never stopped moving from the time she walked outside through when defendant ran over her ankle, and that defendant was driving "like 5, 10" miles per hour. While AW's testimony does not establish an exact time frame, one can deduce that this happened in the same few minutes, or less than one minute. Thus, a specific unanimity instruction as to domestic violence was not required.

---

[2] We note that MCL 750.81 was amended by 2023 PA 271, effective March 5, 2024. We rely on the version of the statute in effect at the time the incident occurred in January 2024, though the amended language does not affect the issues on appeal.

This is also true because defendant did not "present a separate defense or offer materially distinct evidence of impeachment regarding any particular act." See *Cooks*, 446 Mich at 528 (holding that the defendant was not entitled to a specific unanimity instruction when he "merely denied the existence of any inappropriate behavior").

Defendant cites two unpublished opinions where this Court found defense counsel was ineffective for not requesting a specific unanimity instruction. Unpublished authorities are not binding on this Court but may be considered as persuasive authority. *People v Daniels*, 311 Mich App 257, 268 n. 4; 874 NW2d 732 (2015). Both cases, however, are factually distinguishable in significant ways. In *People v Dunn*, unpublished per curiam opinion of the Court of Appeals, issued October 6, 2022 (Docket No. 356026), p 2, the alleged illegal conduct (the receipt of four checks from the victim's bank account, and the failure to pay rent to the victim) was separated by and occurred over a significant time period. In *People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued July 1, 2021 (Docket Nos. 352024 and 352025), pp 6-7, the two bases of alleged illegal conduct were completely different (committing arson and keeping items that defendants claimed were lost in the arson). Thus, these unpublished opinions are unpersuasive.

"Defense counsel is not ineffective for failing to request a jury instruction if there was insufficient evidence that the jury instruction would apply to the defendant's case."[3] *People v Geary*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371889); slip op at 3 (citation omitted). Because we conclude that a specific unanimity instruction was not required for the domestic violence charge here, trial defense counsel's performance cannot be said to fall "below an objective standard of reasonableness under prevailing professional norms . . . ." *Shaw*, 315 Mich App at 672, citing *Strickland*, 466 US 687-688, 694. Therefore, defense counsel was not ineffective for failing to request the instruction for domestic violence.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense

---

[3] This analysis implies that the specific unanimity instruction might not have been required for the felonious assault charge either, but giving it as requested and under the circumstances was not error.